# 23-1018-cv

# United States Court of Appeals
## *for the*
# Second Circuit

YOLANDA D. TYSON,

*Plaintiff-Appellant,*

— v. —

TOWN OF RAMAPO, CHRISTOPHER P. ST. LAWRENCE,
as Town Supervisor, Individually, YITZCHOK ULLMAN,
as Councilman, Individually, SAMUEL TRESS, as Councilman, Individually,
BRENDEL CHARLES, as Councilwoman, Individually, AKA Brendal Logan,
PATRICK J. WITHERS, as Councilman, Individually, BRAD R. WEIDEL,
as Chief of Police, Police Department Town of Ramapo; Individually, PETER F.
BROWER, as Former Chief of Police, Police Department Town of Ramapo;
Individually, THOMAS COKELEY, as Captain, Police Department
Town of Ramapo, Individually,

*Defendants-Appellees.*

_____

ON APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF NEW YORK

## BRIEF FOR DEFENDANTS-APPELLEES

LEO DORFMAN, ESQ.
SOKOLOFF STERN LLP
*Attorneys for Defendants-Appellees*
179 Westbury Avenue, 2nd Floor
Carle Place, New York 11514
(516) 334-4500

# TABLE OF CONTENTS

**Page**

TABLE OF AUTHORITIES ................................................................. ii

STATEMENT OF THE ISSUE .............................................................1

STATEMENT OF THE CASE ...............................................................2

STATEMENT OF FACTS ....................................................................4

SUMMARY OF THE ARGUMENT ....................................................20

ARGUMENT

    THE DISTRICT COURT CORRECTLY DISMISSED
    TYSON'S DISCRIMINATION CLAIMS ...................................22

I.    THE DISTRICT COURT CORRECTLY HELD THERE IS
    NO REASON TO INFER DISCRIMINATION PLAYED
    ANY ROLE IN TYSON'S TERMINATION ..................................24

    A.    The Only Issue on Appeal is Whether the Decision to
    Terminate Plaintiff was Discriminatory and Unlawful ...........24

    B.    Plaintiff Cannot Make out a *Prima Facie* Case of
    Discrimination – Discriminatory Animus Played No
    Role in Plaintiff's Termination ...................................................25

        1.    No Direct Evidence of Discrimination ...........................26

        2.    No Circumstantial Evidence of Discrimination in
        Termination....................................................................26

        3.    No Circumstantial Evidence of Discrimination in
        Denial of Light Duty Assignment .................................32

II.    THE DISTRICT COURT CORRECTLY HELD THERE IS
    NO REASON TO DOUBT THE TOWN'S NON-
    DISCRIMINATORY REASONS FOR THE
    TERMINATION .................................................................35

CONCLUSION ....................................................................................38

i

# TABLE OF AUTHORITIES

**Page(s)**

**Cases:**

*30 Clinton Place Owners Inc. v. City of New Rochelle*,
  13-CV-3793, 2014 WL 890482 (S.D.N.Y. Feb. 27, 2014) .................................30

*Abdul-Hakeem v. Parkinson*,
  523 F. App'x 19 (2d Cir. 2013) ..........................................................................26

*Anderson v. Anheuser Busch, Inc.*,
  229 F.3d 1135, 2000 WL 1370266 (2d Cir. 2000) ..............................................28

*Baby v. Nassau Healthcare Corp.*,
  No. 14-cv-3297 (JMA)(GRB), 2017 WL 3279091
  (E.D.N.Y. Feb. 6, 2017), *report and recommendation adopted*,
  No. 14-cv-3297 (JMA)(GRB), 2017 WL 3278901
  (E.D.N.Y. Aug. 1, 2017) .....................................................................................28

*Brink v. Union Carbide Corp.*,
  210 F.3d 354 (2d Cir. 2000) ...............................................................................31

*Conway v. Microsoft Corp.*,
  414 F.Supp.2d 450 (S.D.N.Y. 2006) ...................................................................28

*Dangelo v. Client Servs., Inc.*,
  19-CV-1915, 2020 WL5899880 (E.D.N.Y. June 11, 2020),
  *adopted by* 2020 WL4187903 (E.D.N.Y. July 21, 2020) ....................................30

*Doner-Hedrick v. New York Inst. of Tech.*,
  874 F. Supp. 2d 227 (S.D.N.Y. 2012) .................................................................28

*Felske v. Hirschmann*,
  10-CV-8899, 2012 WL716632 (S.D.N.Y. Mar. 1, 2012) ....................................30

*Graham v. Long Island R.R.*,
  230 F.3d 34 (2d Cir. 2000) ............................................................................ 26, 27

*Greenberg v. State Univ. Hosp. - Downstate Med. Ctr.*,
  838 Fed.Appx. 603 (2d Cir. 2020) ......................................................... 25, 36, 37

*Hudson v. W. New York Bics Div.*,
  73 Fed.Appx. 525 (2d Cir. 2003) ........................................................................34

*Humphreys v. Cablevision Sys. Corp.*,
   No. 10-cv-4737, 2012 WL 5289566 (E.D.N.Y. Oct. 23, 2012),
   *aff'd*, 553 F. App'x 13 (2d Cir. 2014) ....................................................28

*Irons v. Bedford-Stuyvesant Cmty. Legal Servs.*,
   No. 13-cv-4467 (MKB), 2015 WL 5692860
   (E.D.N.Y. Sept. 28, 2015) ....................................................28

*Johnson v. L'Oreal USA*,
   No. 21-2914-CV, 2023 WL 2637456 (2d Cir. Mar. 27, 2023) ...........................27

*King v. Town of Wallkill*,
   302 F.Supp.2d 279 (S.D.N.Y. 2004) ....................................................35

*Lizardo v. Denny's, Inc.*,
   270 F.3d 94 (2d Cir. 2001) ....................................................27

*Martinez v. City of Stamford*,
   No. 22-702-CV, 2023 WL 3162131 (2d Cir. May 1, 2023) ...............................22

*McDonnell Douglas Corp. v. Green*,
   411 U.S. 792 (1973) .................................................... 22, 23, 25

*McKinney v. Bennett*,
   No. 06-cv-13486 (SCR)(MDF),
   2009 WL 2981922 (S.D.N.Y. Sept. 16, 2009) ....................................................28

*Miller Marine Servs., Inc. v. Travelers Prop. Cas. Ins. Co.*,
   197 Fed.Appx. 62 (2d Cir. 2006) ....................................................31

*Naumovski v. Norris*,
   934 F.3d 200 (2d Cir. 2019) ....................................................23

*Patterson v. Cnty. of Oneida, N.Y.*,
   375 F.3d 206 (2d Cir. 2004) ....................................................37

*Rommage v. MTA Long Island R.R.*,
   No. 08-cv-836, 2010 WL 4038754 (E.D.N.Y. Sept. 30, 2010) ...........................28

*Ruiz v. Cnty. of Rockland*,
   609 F.3d 486 (2d Cir. 2010) .................................................... 26, 27

*Schiano v. Quality Payroll Sys., Inc.*,
   445 F.3d 597 (2d Cir. 2006) ....................................................22

*Sellers v. M.C. Floor Crafters, Inc.*,
   842 F.2d 639 (2d Cir. 1988) ....................................................31

iv

*Shumway v. United Parcel Serv., Inc.*,
118 F.3d 60 (2d Cir. 1997) ............................................................ 27, 37

*Smalls v. New York Hosp. Med. Ctr. of Queens*,
No. 13-cv-1257 (RRM)(CLP), 2015 WL 5437575
(E.D.N.Y. Sept. 15, 2015) ....................................................................28

*Smith v. American Express Co.*,
853 F.2d 151 (2d Cir.1988) ..................................................................37

*Smith v. Xerox Corp.*,
196 F.3d 358 (2d Cir. 1999) .................................................................22

*Spiegel v. Schulmann*,
604 F.3d 72 (2d Cir. 2010) ..................................................................25

*Texas Dept. of Cmty. Affairs v. Burdine*,
450 U.S. 248 (1981) ...................................................................... 25, 37

*United States v. Priv. Sanitation Indus. Ass'n of Nassau/Suffolk, Inc.*,
44 F.3d 1082 (2d Cir. 1995) ................................................................31

*Van Zant v. KLM Royal Dutch Airlines*,
80 F.3d 708 (2d Cir.1996) ...................................................................36

*Ventillo v. Falco*, 19-CV-03664 (PMH),
2020 WL 7496294 (S.D.N.Y. Dec. 18, 2020)......................................30

*Walsh v. N.Y.C. Hous. Auth.*,
828 F.3d 70 (2d Cir. 2016) ..................................................................23

*Wegmann v. Young Adult Inst., Inc., Trustees of Supplemental
Pension Plan for Certain Mgmt. Emps. of Young Ad*ult Inst.,
No. 20- 1147, 2021 WL 3573753 (2d Cir. Aug. 13, 2021)........................ 22, 23

*Weinstock v. Columbia Univ.*,
224 F.3d 33 (2d Cir. 2000) ....................................................... 25, 36, 37

*Wiggins v. New York City Dep't of Correction*, 06-CIV-1946 (THK),
2008 WL 3447573 (S.D.N.Y. Aug. 12, 2008) ............................. 33, 36

## Statutes & Other Authorities:

42 U.S.C. § 1983 ........................................................................ 2, 22, 23

Fed. R. Civ. P. 56(e)............................................................................31

General Municipal Law § 207-c ................................................................ *passim*

N.Y. Civil Service Law § 71 .................................................................... *passim*

N.Y. Exec. Law § 296 .......................................................................... 3, 22

## STATEMENT OF THE ISSUE

Did the District Court properly grant the police department's motion for summary judgment on a former officer's race/gender discrimination claim where officer was terminated because her medical problems prevented her from doing her job and where the officer failed to set forth any evidence that the decision to terminate her employment had anything to do with her race or gender?

Defendants-Appellees respectfully submit the Court should answer this question in the affirmative and dismiss this appeal.

## STATEMENT OF THE CASE

Plaintiff-Appellant Yolanda Tyson is a former police officer for the Town of Ramapo who was terminated after she went on medical leave and did not return to work for over a year. Tyson litigated her medical leave in a General Municipal Law § 207-c hearing and lost—the Hearing Officer found she waived all claims relating to her medical leave. She litigated her termination in an Article 78 proceeding and lost—the court found her termination was proper. Tyson then brought this action against the Town, the individual Board members, and police officials, alleging race/gender discrimination. But there is no connection between Tyson's race/gender and any employment action.

By Opinion and Order of March 25, 2019 ("MTD Order"), the district court granted in part Defendants-Appellees motion to dismiss. The court: (1) dismissed all claims predating July 3, 2014 as time barred; (2) agreed that Plaintiff-Appellant's termination is the only adequately pleaded adverse employment action; and (3) dismissed all claims against Chief Peter Brower and Captain Thomas Cokeley. Tyson does not challenge these rulings on appeal.

After discovery, the remaining Defendants moved for summary judgment on all claims, with one essential remaining question: whether there was evidence to support the claim that Plaintiff-Appellant's termination was discriminatory to sustain her claims under 42 U.S.C. § 1983, for violation of her constitutional right

to equal protection, and New York Human Rights Law ("NYSHRL"), N.Y. Exec. Law § 296 et seq.

By Opinion & Order of June 12, 2023 ("MSJ Order"), the district court correctly granted in its entirety Defendants-Appellees' motion for summary judgment. The court held Tyson failed to show Defendants treated her less favorably than a similarly situated employee outside her protected group. And the district court ruled that, even if there was some difference in treatment, there is no reason to think the Town's reasons for terminating her employment were pretextual or that race or gender played any role in the difference, *i.e.*, that Tyson was terminated her employment on account of her race or gender. Accordingly, the district court correctly dismissed Tyson's remaining claims and entered judgment for Defendants.

Tyson then filed this appeal.

## STATEMENT OF FACTS

### A. Plaintiff-Appellant Was A Police Officer With The Town of Ramapo Police Department

Plaintiff-Appellant Yolanda Tyson ("Plaintiff" or "Tyson") is a former police officer of the Town of Ramapo Police Department ("Department"). (JA-165.) She identifies as African-American and female. (JA-158.) The Town hired her as a police officer in or around February 2006. (JA-157-60; JA-294.)

On January 31, 2012, Tyson was injured in an on-duty car accident with her patrol vehicle. (JA-169.) She applied for General Municipal Law § 207-c benefits in connection with this incident. (JA-169.) GML 207-c requires an employer pay the affected employee their full salary while the employee is out of work on GML 207-c disability leave. (JA-296-302.) In order for an officer to qualify for GML 207-c disability benefits, the disability must be the result of an injury sustained in the line of duty. (*Id.*) Then-Police Chief Peter Brower ("Chief Brower") granted Tyson's application. (JA-169; JA-304.) On March 16, 2012, Tyson returned to full duty status with no restrictions or qualifications. (JA-306-11.) Accordingly, her GML 207-c benefits terminated upon her return to full duty. (*Id.*)

On September 17, 2013, Tyson injured her finger on duty while restraining an emotionally disturbed person. (JA-169.) She applied for GML 207-c benefits in connection with this incident. (*Id.*) Chief Brower granted her application. (JA-170.) On September 20, 2013, Tyson returned to full duty status with no restrictions or

qualifications. (JA-306-11.) Resultingly, her GML 207-c benefits terminated upon her return to full duty. (*Id.*)

## B. On October 29, 2013, Plaintiff-Appellant Injured Herself and Applied For Disability

On October 29, 2013, Tyson reported that she injured her back while dressing for work in the locker room, prior to the start of her tour of duty. (JA-170; JA-306-11; JA-313-19.) Her injury occurred at 3:52 P.M. (JA-313-19.) Her tour of work was scheduled to begin at 4:00 P.M. (*Id.*) Tyson never returned to work after that date. (JA-170-71.) Since that day, and up to the date of her termination from employment, she had not been physically able to perform the essential job functions of a full-duty police officer. (JA-182-83.)

Tyson applied for GML 207-c benefits in connection with the October 29, 2013 incident. (JA-171.) On November 5, 2013, Chief Brower denied her application, finding the October 2013 event was not a line-of-duty injury ("LODI"). (JA-171; JA-306-11; JA-321.) Chief Brower noted that Tyson was not on-duty when she allegedly injured her back as this occurred prior to her regular scheduled work shift and that only injuries incurred while on-duty are eligible for GML 207-c benefits. (JA-321.)

On February 6, 2014, Tyson was advised that she was being carried as "sick pending LODI" and must follow General Orders in that regard. (JA-306-11.) On

5

April 27, 2014, she reached 180 days of status as sick pending LODI. (JA-306-11; JA-323-24.)

On June 25, 2014, Tyson filed an application to reacquire GML 207-c status for her January 31, 2012 accident, asserting the October 29, 2013 injury was an aggravation of the injuries sustained on duty during the January 31, 2012 accident. (JA-306-11.) Simultaneously, on June 25, 2014, she submitted a memorandum withdrawing her request for a hearing concerning Chief Brower's denial of her GML 207-c application for the injuries she sustained on October 29, 2013. (*Id.*) On July 30, 2014, Chief Brower denied her June 25, 2014 application. (JA-306-11; JA-326.)

On September 5, 2014, Tyson was off duty and was involved in a motor vehicle accident. (JA-328-37.) She applied for GML 207-c benefits and was denied. (*Id.*) She appealed Chief Brower's July 30, 2014 denial of GML 207-c status. (JA-306-11.) On May 9, 2015, the Hearing Officer—upon a Joint Record in lieu of a hearing—upheld the denial of GML 207-c benefits from the October 29, 2013 injury. (JA-339-41.) The Hearing Officer found Tyson had waived all claims arising from the October 2013 incident, noting that, when she withdrew her application, she understood she could not submit a subsequent application and the denial would be final and binding upon her. (*Id.*) Tyson never appealed this determination. (*Id.*)

### C. The Town of Ramapo Terminated Plaintiff-Appellant's Employment

As of January 2016, Tyson had been out on sick leave without GML 207-c LODI benefits—*i.e.*, the Town had carried her sick—for more than two years. (JA-343-97.) Under New York Civil Service Law and a resolution of the Town Board/Police Commission, the Town may terminate the employment of an employee who stays out on disability leave for more than one year without GML 207-c status. (JA-399-402.) On January 28, 2016, the Town issued to Tyson a letter stating:

> In that you have been absent from your Town position of Police Officer for over one year by reason of your workers' compensation leave, this is to advise you pursuant to Section 71 of the New York Civil Service Law and a resolution of the Town Board/Police Commission, that your workers' compensation leave will end and your employment with the Town of Ramapo will terminate on Monday, February 29, 2016.
>
> If you recover from your disability in the future, you have a right under Section 71 of the Civil Service Law to apply to the Rockland County Department of Personnel within one year of the end of your disability for a medical examination to determine your fitness to return to work. If you are fit to return to work, you will be considered for reinstatement to your position, if vacant, or to a similar position. If you cannot be reinstated at that time, your name will be placed on a preferred list.

(*Id.*) Tyson received a second similar letter on May 18, 2016, stating her employment would be terminated as of June 24, 2016. (*Id.*) The Town Board voted to terminate her employment. (JA-404-05.) Her employment was terminated on June 24, 2016. (JA-407.)

On July 7, 2016, Tyson filed an Article 78 proceeding in New York State Supreme Court, County of Rockland, under Index No. 00101/2016, seeking to annul

her termination. (JA-409-16.) On April 4, 2017, the court dismissed the Article 78

action, holding that her termination was proper under Civil Service Law § 71 and

the Memorandum of Agreement. (*Id.*)

### D. Plaintiff-Appellant's Alleged Comparators

*Officer 1*

On October 21, 2008, Officer 1, who is male and Caucasian, sustained a deer

tick bite to the right forearm. (JA-409-16; JA-434.) He was on duty at the time of

this incident. (JA-432.) While canvassing a wooded area looking for a hunter, he

was bitten by a deer tick. (JA-434.) On October 22, 2008, Officer 1 filed for 207-c

benefits. (JA-433.) On December 15, 2008, Chief Brower approved the application.

(JA-431.)

On May 12, 2015, Officer 1 sustained a laceration to his right index finger and

a sprain to his left knee. (JA-430.) He was on-duty at the time of this incident. (JA-

428.) He cut his finger with part of a handcuff while attempting to arrest a subject.

(JA-430.) He fell to the ground when escorting the subject to his patrol car, causing

his left knee to strike the pavement. (*Id.*) On May 12, 2015, Officer 1 filed for GML

207-c benefits. (JA-429.) On June 9, 2015, Chief Brower approved the application.

(JA-427.)

He never returned to full duty after this incident. (JA-435-47.) Officer 1 never stayed out on non-GML 207-c leave for more than one year in connection with any incident. (JA-435-47; JA-424-25.)

*Officer 2*

On September 9, 2007, Officer 2, who is male and Caucasian, sustained a strain to his right shoulder. (JA-424-25; JA-451.) He was on-duty at the time of this incident. (JA-451.) He assisted with the arrest of a suspect attempting to evade the police. (*Id.*) The chase ended in a marshy area, with a four to five foot deep bog of middy water. (*Id.*) He helped other officers out of the bog by extending his right arm for them to grab. (*Id.*) After helping pull officers out of the water, he felt pain in his shoulder. (*Id.*) On September 9, 2007, Officer 2 filed for GML 207-c benefits. (JA-450.) On October 23, 2007, Chief Brower approved the application. (JA-449.)

On November 17, 2008, he was cleared to perform certain transitional duties. (JA-466-67.) Officers out on GM-207 disability may be directed to return to work to perform specific limited transition duties. (JA-466-67; JA-613-14; JA-632-33; JA-663-64.) A physician must clear the officer before the officer is able to perform these duties. (*Id.*) Transitional duties are assigned to officers who are on disability leave with GML 207-c status. (*Id.*) These transitional duties include, *inter alia*, communications duty, report writing, and in-house administration. (*Id.*)

He never returned to full duty. (JA-452-65.) Officer 2 never stayed out on non-GML 207-c leave for more than one year in connection with any incident. (JA-452-65; JA-424-25.)

*Officer 3*

On August 20, 1990, Officer 3, who is male and Caucasian, sustained an injury to his left foot when walking into the police station. (JA-424-25; JA-470.) He was walking up a wooden ramp, which suddenly collapsed and caused him to fall to the ground. (JA-470.)

On January 7, 1992, Officer 3 sustained an injury to his back and legs. (JA-471.) While fingerprinting a person, the person moved and caused him to be thrown off-balance. (*Id.*) He alleged that this injury derived from his August 1990 injury. (*Id.*)

On June 6, 2001, Officer 3 received a letter from Chairman Christopher St. Lawrence stating that he is ineligible for benefits under GML 207-c. (JA-469.) Officer 3 never stayed out on non-GML 207-c leave for more than one year in connection with any incident. (JA-472-75; JA-424-25.)

*Officer 4*

On July 17, 2007, Officer 4, who is male and Caucasian, sustained an injury to his neck. (JA-424-25; JA-503.) He was on-duty at the time of this incident. (*Id.*) His vehicle struck a tree while he was responding to a fire alarm at a chemical plant,

causing an injury to his neck. (*Id.*) On July 17, 2007, he filed for GML 207-c benefits. (JA-504.) On August 31, 2007, Chief Brower approved the application. (JA-502.)

On November 12, 2009, Officer 4 sustained an injury to his back. (JA-506.) He was on duty at the time of the incident. (JA-507.) While standing at the driver's side front window of a stopped car, a passing vehicle's side mirror struck his gun belt, jolting him forward and twisting his body at the waist. (JA-506.) On November 13, 2009, he filed for GML 207-c benefits. (JA-510.) On December 14, 1009, Chief Brower approved the application. (JA-505.)

On June 15, 2011, Officer 4 injured his back muscles. (JA-479.) He was on-duty at the time of this incident. (*Id.*) He participated in taser training and volunteered to be tased. (JA-480.) He had severe pain in his back after being tased. (*Id.*) On June 15, 2011, he filed for GML 207-c benefits. (JA-478.) Chief Brower approved the application. (JA-477.)

On July 23, 2019, he was assigned to modified duty. (JA-500-01.) He was directed to work in the Records Office. (*Id.*) Officer 4 never stayed out on non-GML 207-c leave for more than one year in connection with any incident. (JA-481-99; JA-424-25.)

*Officer 5*

On May 15, 2012, Officer 5, who is male and Caucasian, injured his right knee. (JA-424-25; JA-512.) He was on-duty at the time of this incident. (*Id.*) While participating in a rifle training course, he slipped on wet pavement, causing him to fall on his right knee. (JA-513.) On May 15, 2012, Officer 5 filed for GML 207-c benefits. (JA-514.) Chief Brower approved the application. (JA-515.)

On March 18, 2013, Officer 5 sustained another injury to his right knee. (JA-525.) He was not on-duty at the time of this incident. (JA-521; JA-525.) While cleaning snow off his car after his tour ended, he slipped on snow and ice in the police department's parking lot. (JA-522.) On March 19, 2013, he filed for GML 207-c benefits. (JA-523-25.) Chief Brower denied this application. (JA-520-21.) Chief Brower found that he ended his tour at 10:45 PM, and Officer 5 slipped in the parking lot at 10:50 PM. (JA-521.)

On June 23, 2013, Officer 5 injured his right knee. (JA-516.) He was on-duty at the time of this incident. (JA-517.) While assisting an intoxicated prisoner into a holding cell, the prisoner fell down and dragged him to the floor, causing him to fall on his right knee. (*Id.*) On June 23, 2013, Officer 5 filed for GML 207-c benefits. (JA-518.) Chief Brower approved the application. (JA-519.)

Officer 5 never stayed out on disability leave without GML 207-c leave for more than one year in connection with any incident. (JA-526-39; JA-424-25.)

*Officer 6*

On September 13, 2004, Officer 6, who is male and Caucasian, sustained an injury to his lower back and right hip. (JA-424-25; JA-601.) He was on-duty at the time of this incident. (*Id.*) He lost his balance while exiting a tractor trailer cab, causing him to fall 7-8 feet to the ground onto his back and right hip. (*Id.*) On September 17, 2004, he filed for GML 207-c benefits. (JA-600.) On November 8, 2004, Chief Dolan approved the application. (JA-599.)

On February 14, 2005, Officer 6 sustained an injury in a motor vehicle accident. (JA-604.) He was on-duty at the time of this incident. (*Id.*) While operating a patrol vehicle, he swerved to avoid striking another vehicle and hit a small tree, causing pain to his right shoulder and chest. (JA-603.) On February 14, 2005, he filed for GML 207-c benefits. (JA-602.)

On May 4, 2007, Officer 6 injured his left arm. (JA-553.) He was on-duty at the time of this incident. (*Id.*) While responding to a fire alarm at a house, the homeowner's dog bit him in the left arm and hand, causing small puncture wounds. (*Id.*) On May 4, 2007, Officer 6 filed for GML 207-c benefits. (JA-552.) Chief Brower approved the application. (JA-551.)

On November 16, 2009, Officer 6 injured his head. (JA-549.) He was on-duty at the time of this incident. (*Id.*) While on a call of a smoke condition in a house, he struck his head on a low beam when walking down a set of stairs into the basement.

(*Id.*) On November 16, 2009, Officer 6 filed for GML 207-c benefits. (JA-550.) Chief Brower approved the application. (JA-548.)

On June 9, 2010, Officer 6 injured his left eye. (JA-546.) He was on-duty at the time of this incident. (*Id.*) While operating the turning target system computer, a lead shot pellet that ricocheted off a steel target stuck him in the eye. (*Id.*) On June 9, 2010, he filed for GML 207-c benefits. (JA-547.) On June 22, 2010, Chief Brower approved the application. (JA-545.)

On January 15, 2013, Officer 6 sustained an injury to his head. (JA-607.) He was on-duty at the time of this incident. (JA-606-07.) After placing patrol equipment in the front passenger side of his patrol vehicle, he hit his head on the corner of the front passenger door. (JA-607.) On January 15, 2013, he filed for GML 207-c benefits. (JA-608.)

On February 15, 2013, Chief Brower denied the application. (JA-605-06.) Chief Brower found, when Officer 6 received medical treatment on the day of the incident, the physician determined that he was fit to return to duty and that there was no disability. (JA-607.)

On January 7, 2014, Officer 6 sustained an injury to his left shoulder. (JA-610.) He was on-duty at the time of this incident. (JA-611.) While detailed to an alarm activation of a residence, he slipped on ice in the driveway area, causing him to fall on his left hip and shoulder. (JA-612.) On January 7, 2014, he filed for GML

14

207-c benefits. (JA-609.) On February 12, 2014, Chief Brower approved the application. (*Id.*)

On February 16, 2016, Officer 6 injured the left side of his body. (JA-616.) He was on-duty at the time of this incident. (*Id.*) He slipped on ice while conducting an accident investigation, causing him to fall on the left side of his body. (*Id.*) On February 16, 2016, he filed for GML 207-c benefits. (JA-615.) On March 31, 2016, Chief Weidel approved the application, but only for the dates February 17, 2016 to March 1, 2016. (*Id.*)

Officer 6 stayed out on disability leave without GML 207-c status for more than one year. (JA-554-98; JA-424-25.) In or around December 2019, the Town informed him that his employment would be terminated under Civil Service Law § 71. (JA-424-25.) He was close to retirement at this time. (*Id.*) Pursuant to a settlement agreement with the Town, he agreed to retire from the Department in lieu of termination. (JA-541-44; JA-424-25.)

*Officer 7*

On July 19, 1980, Officer 7, who is male and Caucasian, injured his right leg. (JA-424-25; JA-618.) He was on-duty at the time of this incident. (JA-619.) A dog bit him in his right leg while arresting a suspect. (*Id.*)

15

On July 2, 1985, Officer 7 sustained an injury to his left hand. (JA-620.) He was on-duty at the time of this incident. (JA-621.) He injured his left hand while subduing a subject who was resisting arrest. (JA-620-21.)

On June 17, 1986, Officer 7 sustained an injury to his groin. (JA-622.) He was on-duty at the time of this incident. (*Id.*) A subject kicked him in his groin, causing severe pain and contusions of the testicles. (JA-622-23.)

On April 30, 1992, Officer 7 sustained an injury to his head and neck. (JA-631.) He was on-duty at the time of this incident. (*Id.*) While responding to a burglary call, a suspect struck him in the neck, shoulder, and back with chairs and other objects. (*Id.*)

On September 27, 2007, Officer 7 applied for Performance of Duty and Accidental Disability Retirement with New York State, relating to the incident on April 30, 1992. (JA-634-35.) On January 13, 2009, the Office of the New York State Comptroller denied his applications. (*Id.*)

On November 14, 2010, Officer 7 sustained an injury to his left knee. (JA-626.) He was on-duty at the time of this incident. (JA-627.) His tour began at 7:00 AM. (*Id.*) His injury occurred at 11:30 AM. (*Id.*) He entered the locker room and slipped on the floor, causing him to land on his left knee. (JA-626.) On November 14, 2010, he filed for GML 207-c benefits. (JA-625.) On January 19, 2011, Chief Brower approved the application. (JA-624.)

16

Officer 7 never stayed out on non-GML 207-c leave for more than one year in connection with any incident, except between September 27, 2007 and January 13, 2009 while his disability retirement application was pending. (JA-628-30; JA-634-35; JA-424-25.)

*Officer 8*

On September 28, 2010, Officer 8, who is male and Caucasian, injured his neck and lower back. (JA-424-25; JA-644-45.) He was on-duty at the time of this incident. (JA-642.) While attempting to overtake a vehicle, he lost control of his patrol car and struck a tree, causing his head to slam back into his headrest. (JA-645.) On September 28, 2010, he filed for GML 207-c benefits. (JA-643.) On November 5, 2010, Chief Brower approved the application. (JA-646.)

On May 1, 2013, Officer 8 sustained an injury to his right hamstring. (JA-640-41.) He was on-duty at the time of this incident. (JA-638.) While running at the Ramapo firing range, he strained his right hamstring. (JA-641.) On May 1, 2013, he filed for GML 207-c benefits. (JA-639.) On May 24, 2013, Chief Brower approved the application. (JA-637.)

On August 1, 2017, Officer 8 sustained an injury to his right ankle, chest, and throat. (JA-650.) He was on-duty at the time of this incident. (*Id.*) He was exposed to smoke inhalation while searching apartments at the scene of a fire. (JA-649.) On August 1, 2017, he filed for GML 207-c benefits. (JA-651.) On September 8, 2017,

Chief Weidel denied the application. (JA-647-48.) Chief Weidel found, when Officer 8 received medical treatment on the day of the incident, the physician determined that he was fit to return to duty and that there was no disability. (JA-648.)

Officer 8 never stayed out on non-GML 207-c leave for more than one year in connection with any incident. (JA-652-62; JA-424-25.)

*Officer 9*

On January 20, 2001, Officer 9, who is male and Caucasian, sustained an injury to his back. (JA-424-25; JA-674.) While attempting to lift his briefcase out of his locker, he twisted the wrong way and felt pain in his back. (JA-671-72.) On January 20, 2001, he filed for GML 207-c benefits. (JA-673.) On April 5, 2001, Chief Ruggiero denied the application. (JA-670.) Chief Ruggiero found, based on the provided reports, absent any information showing that his injury resulted from some level of heightened risk associated with police activity, Officer 9's application must be denied. (*Id.*)

On November 4, 2008, Officer 9 injured his left shoulder. (JA-667.) He was on-duty at the time of this incident. (*Id.*) His tour began at 11:55 PM on November 3, 2008. (*Id.*) His injury happened at 12:15 AM on November 4, 2008. (*Id.*) While putting on a heavy leather uniform jacket in the locker room, he rotated his left arm into the sleeve and felt immediate pain in his left shoulder. (JA-669.) On November

4, 2008, he filed for GML 207-c benefits. (JA-668.) On December 15, 2008, Chief Brower approved the application. (JA-666.)

Officer 9 never stayed out on non-GML 207-c leave for more than one year in connection with any incident. (JA-675-80; JA-424-25.)

*Officer 10*

On July 20, 2008, Officer 10, who is female and Caucasian, injured her left knee and left foot. (JA-424-25; JA-684.) She was on-duty at the time of the incident. (JA-683.) After apprehending a suspect, she felt pain in her left knee. (JA-686.) On July 24, 2008, she filed for GML 207-c benefits. (JA-685.) Chief Brower approved the application. (JA-682.) Officer 10 never stayed out on non-GML 207-c leave for more than one year in connection with any incident. (JA-687-92; JA-424-25.)

*Officer 11*

Officer 11, who is female and Caucasian, never stayed out on non-GML 207-c leave for more than one year in connection with any incident. (JA-424-25; JA-694-95.)

## SUMMARY OF THE ARGUMENT

Tyson reiterates and relies here on arguments the district court already thoroughly examined and properly rejected when it granted Defendants' motion for summary judgment. Defendants terminated Tyson for legitimate, non-discriminatory reasons: her medical condition prevented her from performing the essential functions of a full-duty police officer for more than a year, and—as the state courts already confirmed—she was not entitled to GML 207-c LODI benefits/job protections. Under Town policy, officers out sick for more than a year without LODI protections are subject to termination.

The Town applied this policy to Tyson, like it did to other officers, and it did not treat Tyson differently from any of her purported comparators. For most of her comparators, LODI status was the critical distinguishing factor—officers with LODI protections were treated differently from Tyson, who undisputedly did not have such protections. The only other officer out more than a year without LODI protection, a white male, was also separated from his employment with the Town. He was treated the same as Tyson.

On appeal, Tyson tries to shift to the focus away from her termination and to the question of "light duty"—she argues she was entitled to continue working in a light duty position indefinitely, until she was eligible for retirement. So, this argument goes, by not giving her this "entitlement," the Town created the conditions

for her termination. But this syllogism fails at every step. The Town has no permanent light duty positions—every officer is expected to work full duty, unless they have LODI disability status. No law or Town policy requires the Town to assign light duty positions to non-LODI officers like Tyson. And while the Town has assigned *temporary* light duty to some officers, it was only to those with LODI status or with LODI applications pending. Plus, critically, as the district court correctly found, there is no evidence Tyson ever actually *requested* a light duty position.

Defendants did not treat Tyson differently from any similarly situated employee. There is no cause to think the reason for her termination was pretextual or that her race or gender played any role in the decision.

# ARGUMENT

## THE DISTRICT COURT CORRECTLY DISMISSED TYSON'S DISCRIMINATION CLAIMS

Defendants never discriminated against Tyson on account of her race or gender, and the district court correctly concluded there is no evidence to support her discrimination claim.

Tyson asserts four claims for relief under 42 U.S.C. § 1983 for violation of her constitutional equal protection rights and NYSHRL § 296, alleging discrimination because of her race and gender in connection with her termination. The standards governing liability for race and gender discrimination claims under § 1983 and NYSHRL § 296 are subject to the same standard as Title VII claims. *Martinez v. City of Stamford*, No. 22-702-CV, 2023 WL 3162131, at *3 (2d Cir. May 1, 2023); *Schiano v. Quality Payroll Sys., Inc.*, 445 F.3d 597, 609 (2d Cir. 2006) (citing S*mith v. Xerox Corp.*, 196 F.3d 358, 363 n.1 (2d Cir. 1999)). These claims are analyzed at the summary judgment stage "under the familiar burden-shifting framework set forth in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973)." *Wegmann v. Young Adult Inst., Inc., Trustees of Supplemental Pension Plan for Certain Mgmt. Emps. of Young Adult Inst.*, No. 20- 1147, 2021 WL 3573753, at *4 (2d Cir. Aug. 13, 2021). The plaintiff must first present a *prima facie* case of discrimination under that framework "by demonstrating that (1) she was within the protected class; (2) she was qualified for the position; (3) she was subject to an

22

adverse employment action; and (4) the adverse action occurred under circumstances giving rise to an inference of discrimination." *Id.* (quoting *Walsh v. N.Y.C. Hous. Auth.*, 828 F.3d 70, 74-75 (2d Cir. 2016)). The burden then shifts to the defendant "to articulate some legitimate, nondiscriminatory reason for the adverse employment action." *Id.* (quoting *Walsh*, 828 F.3d at 74-75).

"If the defendant articulates a legitimate reason for the action, the presumption of discrimination raised by the *prima facie* case drops out, and the plaintiff has the opportunity to demonstrate that the proffered reason was not the true reason for the employment decision and that the plaintiff's membership in a protected class was." *Id.* (citing *McDonnell Douglas*, 411 U.S. at 804). Although the *McDonnell Douglas* framework is employed to analyze § 1983 claims, "courts must account for a § 1983 plaintiff's higher burden of producing evidence from which a jury could infer that the individual's discriminatory intent was a 'but-for' cause of the adverse employment action." *Naumovski v. Norris*, 934 F.3d 200, 214 (2d Cir. 2019). Accordingly, at the third step of the *McDonnell Douglas* analysis, a plaintiff asserting a § 1983 claim bears a higher burden in establishing that the employer's alternative, nondiscriminatory reason for the adverse employment action is "pretextual." *Naumovski*, 934 F.3d at 214.

Here, as the district court correctly found, Tyson cannot make out a *prima facie* discrimination claim because there is no evidence discriminatory animus

played a role in her termination. The district court also correctly found no evidence the Defendants' stated reason for her termination—long term leave without legal protections—was a pretext for discrimination, much less that discrimination was the "but-for" cause of any adverse employment decision.

## I. THE DISTRICT COURT CORRECTLY HELD THERE IS NO REASON TO INFER DISCRIMINATION PLAYED ANY ROLE IN TYSON'S TERMINATION

### A. The Only Issue on Appeal is Whether the Decision to Terminate Plaintiff was Discriminatory and Unlawful

Since the beginning of the case, and now on appeal, Tyson has made her claim a moving target, claiming discrimination at various turns—the GML 207-c application, the "light duty" issue, the termination decision, etc. But as the district court correctly held, the only issue at the summary judgment stage—and now the only issue here—is whether the decision to terminate Tyson was itself discriminatory. As the district court correctly recognized, the issue is not about light duty or about GML 207-c benefits—"the only issue before this Court is whether [Tyson's] termination was discriminatory, not whether the failure to offer light duty status was discriminatory" and "any claim that [Tyson] should have been granted GML § 207-c benefits was dismissed by the Prior Order." (SA-16.) In the MTD Order, district court dismissed all claims *except* Tyson's claim that she was terminated for discriminatory reasons. (SA-2-3.) The only issue on summary

judgment, and the only issue on appeal, is whether termination itself was discriminatory. (SA-3.)

### B. Plaintiff Cannot Make out a *Prima Facie* Case of Discrimination – Discriminatory Animus Played No Role in Plaintiff's Termination

The District Court was correct in holding Tyson's termination does not give rise to an inference of discrimination. There is no evidence discriminatory motive played any role in her termination.

To sustain a discrimination claim, Tyson "has the burden of proving by the preponderance of the evidence a *prima facie* case of discrimination." *Texas Dept. of Cmty. Affairs v. Burdine*, 450 U.S. 248, 252-53 (1981); *see also McDonnell Douglas v. Green*, 411 U.S. 792 (1973); *Spiegel v. Schulmann*, 604 F.3d 72, 80 (2d Cir. 2010). In order to meet this burden, Tyson must show: (1) she belonged to a protected class; (2) she was qualified for the position; (3) she suffered an adverse employment action; and (4) the adverse employment action occurred under circumstances giving rise to an inference of discriminatory intent. *Greenberg v. State Univ. Hosp. - Downstate Med. Ctr.*, 838 Fed.Appx. 603, 607 (2d Cir. 2020) (citing *Weinstock v. Columbia Univ.*, 224 F.3d 33, 42 (2d Cir. 2000)). If Tyson successfully establishes a *prima facie* case, the burden shifts to the Town to establish legitimate, non-discriminatory reasons for their actions. *Id.* The burden then shifts back to Tyson to prove, with admissible evidence and not conclusory supposition, that the Town's articulated rationale is a mere pretext for discrimination. *Id.*

### 1. *No Direct Evidence of Discrimination*

There is no cause to think Tyson's race or gender played any role in the decision to terminate her employment. There is no direct evidence of discriminatory intent, and Tyson does not argue there is.

### 2. *No Circumstantial Evidence of Discrimination in Termination*

Without direct evidence, Tyson's entire discrimination claim rests on her assertion that she was treated differently than eleven Caucasian officers. (Pl. Brief at 11-19.) "A showing of disparate treatment—that is, a showing that an employer treated plaintiff less favorably than a similarly situated employee outside his protected group—is a recognized method of raising an inference of discrimination for the purposes of making out a *prima facie* case." *Abdul-Hakeem v. Parkinson*, 523 F. App'x 19, 20-21 (2d Cir. 2013) (quoting *Ruiz v. Cnty. of Rockland*, 609 F.3d 486, 493 (2d Cir. 2010)).

"The 'standard for comparing conduct requires a reasonably close resemblance of the facts and circumstances of plaintiff's and comparator's cases,' such that 'the comparator must be similarly situated to the plaintiff in all material respects.'" *Abdul-Hakeem*, 523 F. App'x at 21 (quoting *Ruiz*, 609 F.3d at 494); *Graham v. Long Island R.R.*, 230 F.3d 34, 39 (2d Cir. 2000) ("[T]he plaintiff must show she was similarly situated in all material respects to the individuals with whom she seeks to compare herself."). "An employee is similarly situated to co-employees

if they were (1) subject to the same performance evaluation and discipline standards and (2) engaged in comparable conduct." *Johnson v. L'Oreal USA*, No. 21-2914-CV, 2023 WL 2637456, at *4 (2d Cir. Mar. 27, 2023) (quoting *Ruiz*, 609 F.3d at 493-94); *see also Graham*, 230 F.3d at 40.

Here, it is impossible to make any meaningful, coherent comparison between any one officer's circumstances and another's in this context. There are just too many different variables to consider, much less to conclude the comparators are similar in all material respects, which is necessary for comparator analysis. The alleged comparators—which date back to the early 1990's, all suffered different injuries, some before their tours and some after, under different circumstances, and made different applications, to different decision-makers, under different rules and regulations. No reasonable jury could reasonably conclude that any of the individual officers are valid comparators.

Courts in this circuit routinely dismiss discrimination claims when they determine—as a matter of law—that a plaintiff has failed to offer valid comparators. *See Lizardo v. Denny's, Inc.*, 270 F.3d 94 (2d Cir. 2001) (dismissing § 1981 discrimination case because plaintiffs did not offer sufficient comparator evidence from which a jury could reach a conclusion that plaintiffs were similarly situated to comparators); *Shumway v. United Parcel Serv., Inc.*, 118 F.3d 60, 64 (2d Cir. 1997) (holding that alleged comparators were not similarly situated in part because they

had different supervisors); *Anderson v. Anheuser Busch, Inc.*, 229 F.3d 1135, 2000 WL 1370266, at *1 (2d Cir. 2000) (summary order); *McKinney v. Bennett*, No. 06-cv-13486 (SCR)(MDF), 2009 WL 2981922, at *7 (S.D.N.Y. Sept. 16, 2009); *Rommage v. MTA Long Island R.R.*, No. 08-cv-836, 2010 WL 4038754, at *9 (E.D.N.Y. Sept. 30, 2010); *Nurse*, 854 F.Supp.2d at 312; *Doner-Hedrick v. New York Inst. of Tech.*, 874 F. Supp. 2d 227, 243 (S.D.N.Y. 2012); *Humphreys v. Cablevision Sys. Corp.*, No. 10-cv-4737, 2012 WL 5289566, at *1 (E.D.N.Y. Oct. 23, 2012), *aff'd*, 553 F. App'x 13 (2d Cir. 2014); *Watson*, 2013 WL 5420932 at *10; *Smalls v. New York Hosp. Med. Ctr. of Queens*, No. 13-cv-1257 (RRM)(CLP), 2015 WL 5437575, at *1 (E.D.N.Y. Sept. 15, 2015); *Irons v. Bedford-Stuyvesant Cmty. Legal Servs.*, No. 13-cv-4467 (MKB), 2015 WL 5692860, at *10 (E.D.N.Y. Sept. 28, 2015); *Baby v. Nassau Healthcare Corp.*, No. 14-cv-3297 (JMA)(GRB), 2017 WL 3279091, at *15 (E.D.N.Y. Feb. 6, 2017), *report and recommendation adopted*, No. 14-cv-3297 (JMA)(GRB), 2017 WL 3278901 (E.D.N.Y. Aug. 1, 2017).

Tyson cannot rely on any comparators that predate 2016, because those officers were subject to a different set of policies on termination for extended leave. *Conway v. Microsoft Corp.*, 414 F.Supp.2d 450, 465 (S.D.N.Y. 2006) (employees who were subject to different workplace standards were not similarly situated). In 2016, the Town entered into a Memorandum of Agreement with the union, whereby the Town and union was agreed that the Town could terminate under Civil Service

Law § 71 officers who remained out on leave for more than a year without line of duty injury (GML 207-c). (JA-409-16.) This policy was not in effect before 2016, so officers on extended leave before then would not have been subject to the same policy as Tyson.

And many of the comparators applied for benefits to different decision-makers, *i.e.,* different police chiefs. For example, Officer 6 applied for benefits with Chief Dolan (JA-599.) and Chief Weidel (JA-615.), Officer 8 applied for benefits with Chief Weidel (JA-647-48.), and Officer 9 applied for benefits with Chief Ruggiero (JA-670.).

As to the termination, there is no evidence Board members who decided to terminate Tyson ever had to decide whether to terminate any other officer for similar reasons.

Even if comparison were possible, Tyson cannot show treatment differently from any similarly situated employees, let alone differential treatment because of her race or gender. The majority of officers Tyson identifies as comparators, *i.e.*, Officers 1-5 and 7-11, were not similarly situated to her in any way that matters.

As the District Court correctly ruled, Tyson effectively abandoned any argument that Officers 1-5 and 7-11 are adequate comparators. (SA-14.) Judge Halpern held "[a]lthough eleven Caucasian officers were identified by the parties as possible comparators, [Tyson] focuse[d] solely on Officer 6 in her opposition with

respect to her analysis of Defendants' alleged disparate treatment" and as a result thereof, "abandoned any argument that Officers 1-5 and 7-11 are adequate comparators." (*Id.*) In their moving papers, Defendants analyzed each officer named by Tyson with whom she seeks to compare herself, exhaustively arguing why majority of the officers were not similarly situated to her and why the only similarly situated officer was not treated differently than her. (*Id.*) Tyson only addressed the argument for Officer 6. (*Id.*) As she did not respond to arguments for Officers 1-5 and 7-11, Tyson effectively conceded the points. *Ventillo v. Falco*, 19-CV-03664 (PMH), 2020 WL 7496294, at *12 (S.D.N.Y. Dec. 18, 2020) (citing *30 Clinton Place Owners Inc. v. City of New Rochelle*, 13-CV-3793, 2014 WL 890482, at *1 n.1 (S.D.N.Y. Feb. 27, 2014) (quoting *Felske v. Hirschmann*, 10-CV-8899, 2012 WL 716632, at *3 (S.D.N.Y. Mar. 1, 2012)); *see also Dangelo v. Client Servs., Inc.*, 19-CV-1915, 2020 WL 5899880, at *4 (E.D.N.Y. June 11, 2020) (recommending claims be deemed abandoned for plaintiff's failure to respond to arguments for dismissal), *adopted by* 2020 WL 4187903 (E.D.N.Y. July 21, 2020).

In any event, Officers 1-5 and 7-11 are dissimilar in at least one important respect that makes all the difference: they all had GML 207(c) job protections that Tyson did not have when she was terminated. Unlike Tyson, Officers 1-5 and 7-11 never stayed out on leave for over a year without GML 207-c protection. (JA-424-

25; JA-435-47; JA-452-65; JA-472-75; JA-481-99; JA-526-39; JA-628-30; JA-634-35; JA-652-62; JA-675-80; JA-687-92; JA-694-95.)

Tyson's own affidavit "testimony" concerning these officers is not admissible evidence because she has no knowledge of their status during the period they were assigned light duty. (JA-1138-40.) *See Miller Marine Servs., Inc. v. Travelers Prop. Cas. Ins. Co.*, 197 Fed.Appx. 62, 64 (2d Cir. 2006) (citing Fed. R. Civ. P. 56(e)) ("affidavits opposing summary judgment must be 'made on personal knowledge, set[ting] forth such facts as would be admissible in evidence, and...show affirmatively that the affiant is competent to testify to the matters stated therein'"); *Brink v. Union Carbide Corp.*, 210 F.3d 354 (2d Cir. 2000) ("[Based on Fed. R. Civ. P. 56(e)], the evidence proffered by the party opposing summary judgment must be of a type that would be admissible at trial."); *United States v. Priv. Sanitation Indus. Ass'n of Nassau/Suffolk, Inc.*, 44 F.3d 1082, 1084 (2d Cir. 1995) ("Because this statement was not based upon personal knowledge, it did not suffice to create an issue of fact precluding summary judgment."); *Sellers v. M.C. Floor Crafters, Inc.*, 842 F.2d 639, 643 (2d Cir. 1988) (motion for summary judgment must be supported by affidavit based upon personal knowledge).

There is only one officer who, like Tyson, stayed out on disability leave for more than one year without GML 207-c benefits, *i.e.*, Officer 6, and the Town treated that officer the same as Tyson. As the district court correctly found, "Officer 6 and

Tyson were both Ramapo PD police officers; and although Officer 6 had been granted GML § 207-c leave, after that status terminated, like [Tyson] he was thereafter absent from the workplace for more than one year." (SA-14.) The district court properly ruled "[t]he record evidence demonstrates that although [Tyson] was similarly situated to Officer 6, Officer 6 was not actually treated any differently, or more favorably, than [Tyson]." As with Tyson, the Town informed Officer 6 that his employment would be terminated under Civil Service Law § 71. (JA-554-98; JA-541-44; JA-424-25.) The district court correctly found:

> Pursuant to a settlement agreement with the Town, Officer 6 agreed to retire from the Department in lieu of termination. The termination letters sent to [Tyson] on January 28, 2016 and May 18, 2016 suggested that she "should consider contacting the Employees' Retirement System…to determine [her] possible eligibility for various retirement benefits, including accidental disability retirement…" There is no evidence in the record indicating that [Tyson] sought out options for retirement while it appears that Officer 6 did...Simply put, Officer 6 was not treated differently from [Tyson], and therefore, [Tyson's] comparator evidence fails as a matter of law

(SA-15.)

### 3. No Circumstantial Evidence of Discrimination in Denial of Light Duty Assignment

Because Tyson cannot show discriminatory treatment in her termination, she attempts to shift the focus to light duty. She argues that: (1) she was entitled to work indefinitely in light duty assignment (Pl. Brief at 6, 13.); (2) other officers in similar circumstances were given light duty assignments (*Id.* at 6-7, 13.); and (3) if she had

an indefinite light duty assignment, she would not have been terminated (*Id.* at 6, 17-18.). She is incorrect on all counts.

As the District Court correctly found, "[Tyson] has not cited any admissible evidence suggesting that she actually requested light duty status, or when she requested such an assignment following the October 29, 2013 injury." (SA-11-12.) Department policies do not create an entitlement to a light duty assignment.

Tyson is asking this Court to rule she had a legal right to stay on Town payroll as a full-duty police officer indefinitely, for many years, until she was able to retire as a full-service police officer. But there is no basis for such a finding. Tyson *admitted* in the district court briefing that only officers on GML 207-c status or pending GML 207-c status (which she was not) are eligible for transitional duty. (JA-718.) The General Order does not mandate the granting of light duty assignment, it says only that the Chief *may* assign light duty. It was not Department practice to assign light duty to officers who did not have GML 207-c status. Just the opposite: Department policy, in accordance with Civil Service Law § 71, is to *terminate* officers who are unable to perform their full duties for more than a year. (JA-399-402.) This ensures the Department allocates its budget to police officers who can work as full duty police officers. *See Wiggins v. New York City Dep't of Correction*, 06-CIV-1946 (THK), 2008 WL 3447573, at *10 (S.D.N.Y. Aug. 12, 2008) ("Civil Service Law § 71…authorizes public employers to medically separate civil servants

if they are out on medical leave for more than one year, and fail to demonstrate that they are fit to return to full duty.").

And the Town's practice—consistently applied to Tyson's so-called comparators—was *not* to give light to duty assignments to officers out without LODI status or pending LODI applications. Tyson has argued attendance records for Officer 7 show that, starting in late September 2007, he stayed out of work for more than one year on non-GML 207-c leave. But his situation is easily distinguishable from Tyson. Officer 7 applied for disability retirement for an April 30, 1992 incident where he responded to a burglary call on-duty. He applied for disability retirement on September 27, 2007 and was denied on January 13, 2009. Just as Tyson was carried sick while her GML 207-c application was pending, Officer 7 was carried sick from late September 2007 to mid-December 2008, then used vacation days to mid-January 2009. After his application was denied, he returned to work. (JA-424-25; JA-618-31; JA-634-35.) In contrast, Tyson never returned to work after her 207-c application was denied and appeal exhausted.

Tyson's references to the Americans with Disabilities Act ("ADA") and "accommodations" are unavailing. Tyson has no surviving ADA claim, and it is well-established that the ADA does not require employers to give light duty assignments. *See Hudson v. W. New York Bics Div.*, 73 Fed.Appx. 525 (2d Cir. 2003) ("former employer did not violate…the ADA by not providing former employee

with light duty work after employee was injured"); *King v. Town of Wallkill*, 302 F.Supp.2d 279, 291 (S.D.N.Y. 2004) ("An employer is not, however, obligated to create a new light-duty position for a disabled employee or make permanent previously temporary light-duty positions."). The District Court correctly ruled:

> [Tyson's] repeated references to the Americans with Disabilities Act and purported request for a reasonable accommodation is a disingenuous attempt to recast the claims she asserted in this action. Stripped to its essence, this case is about [Tyson's] belief that she was terminated based upon her race and gender. Her attempts, through her opposition, to recreate claims and arguments that have been dismissed or to raise new claims that she has not alleged in her pleading, impermissibly makes her case a moving target that the Court declines to entertain.

(SA-11.)

Finally, even if Tyson could set forth a valid comparator and show different treatment, her claim would still fail because there is no evidence any of the individual decisionmakers were aware of the other comparators or their circumstances. If Defendants did not know they were treating Tyson differently from white or male officers, then there is no reason to think Tyson's race or gender factored into their decision-making.

## II. THE DISTRICT COURT CORRECTLY HELD THERE IS NO REASON TO DOUBT THE TOWN'S NON-DISCRIMINATORY REASONS FOR THE TERMINATION

Tyson's discrimination claims fail because she has not presented one iota of evidence showing that the Town terminated her employment due to her race or

gender. The Town terminated Tyson for legitimate, non-discriminatory reasons: her medical condition prevented her from performing the essential functions of a full-duty police officer for more than a year, and she was not entitled to GML 207-c line of duty benefits. The Town's decision to terminate Tyson's employment was based on "Civil Service Law § 71, which authorizes public employers to medically separate civil servants if they are out on medical leave for more than one year, and fail to demonstrate that they are fit to return to full duty." *Wiggins*, 2008 WL 3447573, at *10. Tyson challenged her termination in an Article 78 proceeding, and the New York State Supreme Court upheld her termination. (JA-56-63.)

Because the Town established it had legitimate, non-discriminatory reasons for its decision to terminate her employment, the burden shifts back to Tyson to show that the proffered reasons for her termination from her employment was pretextual—the real reason for her termination being unlawful discrimination. *Greenberg v. State Univ. Hosp. - Downstate Med. Ctr.*, 838 Fed.Appx. 603, 607 (2d Cir. 2020). Tyson "must produce not simply some evidence, but sufficient evidence to support a rational finding that the legitimate, non-discriminatory reasons proffered by the [Town] were false, and that more likely than not [discrimination] was the real reason for [her termination]." *Weinstock v. Columbia Univ.*, 224 F.3d 33, 42 (2d Cir. 2000) (citing *Van Zant v. KLM Royal Dutch Airlines,* 80 F.3d 708, 714 (2d Cir.1996)) (internal citations and quotations omitted). The main issue is "whether the evidence,

36

taken as a whole, supports a sufficient rational inference of discrimination." *Id.* Pretext can be shown "by demonstrating weaknesses, implausibilities, inconsistencies, or contradictions in the employer's proffered reason" or "by providing evidence such that a reasonable factfinder could conclude that the prohibited reason was a motivating factor in the adverse employment action." *Greenberg*, 838 Fed.Appx. at 606 (internal citations and quotations omitted). "The ultimate burden of persuading the trier of fact that the defendant intentionally discriminated against the plaintiff remains at all times with the plaintiff." *Patterson v. Cnty. of Oneida, N.Y.*, 375 F.3d 206, 221 (2d Cir. 2004) (citing *Texas Department of Community Affairs v. Burdine*, 450 U.S. 248, 253 (1981)). "[I]f the plaintiff has failed to show that there is evidence that would permit a rational factfinder to infer that the employer's proffered rationale is pretext, summary judgment dismissing the claim is appropriate, *see, e.g., Smith v. American Express Co.,* 853 F.2d 151, 154-55 (2d Cir.1988) (affirming summary judgment in light of plaintiff's failure to present more than conclusory and substantially unsupported assertions that employer's proffered race-neutral rationale for denial of promotion was pretext)." *Id.*

Tyson failed to show that the Town's conduct was motivated, in whole or in part, by discrimination. A plaintiff cannot rely on bald, unsubstantiated assertions of discriminatory animus towards her. *Shumway*, 118 F.3d at 65. Here, the evidence on

record is bereft of any showing that discrimination was a motivating factor when the Town terminated Tyson's employment.

## CONCLUSION

For the reasons set forth above, Defendants-Appellees respectfully request this Court deny this appeal and affirm the lower court's decision in its entirety, together with awarding Defendants-Appellees the costs of this appeal and such other relief as this Court may deem just, equitable, and proper.

Dated:      Carle Place, New York
            February 5, 2024

            SOKOLOFF STERN LLP
            *Attorneys for Defendants-Appellees*

By:   Leo Dorfman
      179 Westbury Avenue
      Carle Place, New York 11514
      (516) 334-4500
      File No.: 170100

38

## CERTIFICATE OF COMPLIANCE

This document complies with the type-volume limit of Fed. R. App. P. 32(a)(7)(B), the word limit of Local Rule 32.1(a)(4) (A) because, excluding the parts of the document exempted by Fed. R. App. P. 32(f): this document contains 8,392 words.

This document complies with the typeface requirements of Fed. R. App. P. 32(a)(5) and the type-style requirements of Fed. R. App. P. 32(a)(6) because: this document has been prepared in a proportionally spaced typeface using Microsoft Word in 14-point font Times New Roman.

Dated: New York, New York
February 5, 2024